J-S09034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: A.C.C., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| | |
| APPEAL OF: C.C., FATHER | |
| | No. 2896 EDA 2016 |

Appeal from the Order August 22, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000247-2016

BEFORE:  SHOGAN, STABILE, and PLATT,* JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED APRIL 21, 2017**

C.C. ("Father") appeals from the order entered August 22, 2016, terminating his parental rights to his daughter, A.C.C. ("Child"), born in November of 2012.  We are constrained to vacate the order of termination and remand to the trial court.

The trial court set forth the factual background and procedural history of the case as follows:

> The family in this case became known to [Appellee, Department of Human Services ("DHS")] on October 29, 2013, when DHS received a General Protective Services ("GPS") report alleging that J.G. ("Mother") . . . left Child and siblings alone unsupervised, that Mother had a history of drug abuse and mental health issues, and that Child had unexplained burn marks on her face.  DHS implemented a safety plan in Mother's home, with Mother and A.G. ("Grandmother"), Child's maternal

---

* Retired Senior Judge assigned to the Superior Court.

grandmother, charged with caring for Child and her siblings. Mother and Grandmother filed custody actions, seeking full custody to keep Child away from Father. On January 2, 2014, Mother was arrested for robbery and incarcerated. On January 10, 2014, at the request of Mother, the court entered a Protection From Abuse ("PFA") order against Father, which remains in effect until January 9, 2017. Father then filed for primary physical and legal custody of Child. On March 24, 2014, Child and her siblings were adjudicated dependent and fully committed to DHS custody. Mother and Father disclosed at this hearing that they had PFAs against one another. At this point, the case was transferred to a Community Umbrella Agency ("CUA") and a Single Case Plan ("SCP") for Father was drawn up. Father's SCP always included an objective to visit with Child. (DHS Exhibit 19-20). Father was ordered by the court to have visits with Child and attend Child's medical appointments. (DHS Exhibit 3-9). The court even ordered Father to visit at a specific time and place, to avoid conflict with Mother. (DHS Exhibit 4). Over the course of 2014 and 2015, Father failed to complete his SCP objectives and was rated non-compliant at regularly-held permanency review hearings. On March 18, 2016, DHS filed a petition to involuntarily terminate Father's rights to Child.

The goal change and termination trial was held on August 22, 2016. Father had signed a subpoena at the prior April 4, 2016, hearing. He failed to appear for the trial. (N.T. 8/22/16, pgs. 6, 29, 38). Father's counsel stipulated to the facts alleged in DHS's Petition for Involuntary Termination, but not their veracity. DHS then properly admitted a number of exhibits. (N.T. 8/22/16, pg. 38). Grandmother testified that Child has been with her for three years, Child's entire life. Child calls Grandmother "mommy" and Grandmother is very willing to adopt Child. (N.T. 8/22/16, pg. 58). Grandmother cares for Child's three siblings, who live in the same home as Child. (N.T. 8/22/16, pg. 59). Grandmother cares for Child, and even takes her to Sesame Park and other recreational events. (N.T. 8/22/16, pg. 60). The CUA social worker testified that it is in Child's best interest to be adopted. (N.T. 8/22/16, pg. 72). Child is bonded with Grandmother. (N.T. 8/22/16, pg. 73). Following argument, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2) and (b).[1] Because no evidence of a bond with Father was presented at trial, the trial court inferred that no bond existed. (N.T. 8/22/16, pgs. 90, 92).

<sup></sup>

¹ The court also terminated Mother's parental rights at this time. Mother has not appealed.

Trial Court Opinion, 10/14/16, at 1–2.

The trial court entered its order terminating Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), and (b) on August 22, 2016. Father filed a notice of appeal and concise statement of errors complained of on appeal on September 9, 2016. The trial court filed its Pa.R.A.P. 1925(a) opinion on October 14, 2016.

Father raises a single issue on appeal: "Whether the [c]ourt erred when it terminated Father's rights under Section 2511(b) where there was no testimony given to support a termination under this section." Father's Brief at 6. In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.**; **In re R.I.S.**, 614 Pa. 275, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**; see also **Samuel-Bassett v. Kia Motors America, Inc.**, 613 Pa. 371, 455, 34 A.3d 1, 51 (Pa. 2011); **Christianson v. Ely**, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**

As we discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

**In re I.E.P.**, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting **In re Adoption of S.P.**, 47 A.3d 817, 826–827 (Pa. 2012)). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009).

We turn our attention to the issue Father preserved on appeal: whether the trial court properly found sufficient evidence to terminate his parental rights pursuant to Section 2511(b).[1] That section provides:

---

[1] Father does not present any challenge to the termination of his parental rights pursuant to 23 Pa.C.S. § 2511(a). Regardless, we have examined the record and are satisfied that it contains sufficient credible evidence to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1). While the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b), this Court must agree with only one subsection of 23 Pa.C.S. § 2511(a) in order to affirm the termination of parental rights. **In re I.E.P.**, 87 A.3d 340, 344 (Pa. Super. 2014) (citing **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

- 4 -

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child, but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 483 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

We have stated that "the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *Adoption of J.M.*, 991 A.2d at 324 (citing *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008)). Moreover, the burden is upon the petitioner, here DHS, "to prove the grounds for termination of parental rights under 23 Pa.C.S. § 2511 by clear and convincing evidence." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citing *Adoption of S.P.*, 47 A.3d at 821–822). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise

facts in issue." ***In the Interest of: A.N.P.***, ___ A.3d ___, ___, 2017 PA Super 21, * 10 (Pa. Super. 2017).

Our careful review of the record compels our conclusion that DHS did not carry its burden of proof in the instant case. As noted by the trial court, Father was not present at the termination hearing in this matter, but his counsel appeared. At the hearing, Father's counsel "stipulate[ed] to the facts in the petition [for involuntary termination of parental rights] but not to the veracity therein." N.T., 8/22/16, at 38. The petition does not contain any **facts** relevant to 23 Pa.C.S. § 2511(b); it merely asserts in conclusory fashion that termination "would best serve the needs and welfare of Child." Petition for Involuntary Termination of Parental Rights, 3/18/16, at ¶ 8. Exhibit A attached to the petition avers that Father has been inconsistent in his visitation and "failed to advance past supervised visits at the agency." *Id*., Exhibit A, ¶ oo. Thus, to assess how DHS carried its burden of proof, we examine the evidence presented at the termination hearing.

At the hearing, DHS first called Mother as on cross-examination. Obviously, all evidence supplied by this witness concerned only this witness. N.T., 8/22/16, at 40–57. DHS's next witness was Grandmother. Child has lived with Grandmother since March of 2014. *Id*. at 58. Grandmother did not offer any testimony related to Father, and Father's counsel chose not to cross-examine Grandmother. *Id*. at 57–64. DHS then presented the testimony of Jenard Whitman of Catholic Community Services. *Id*. at 65–

75. Mr. Whitman presented testimony regarding only Mother; Father was not mentioned. Father's counsel chose not to cross-examine Mr. Whitman. *Id*. at 76. DHS rested, and Mother's counsel recalled Mother as a witness. *Id*. at 80–83.

> Father's counsel then asserted to the trial court as follows:
>
> Interestingly enough because [M]other's here the city [sic] has focused primarily on [M]other and all the bonding testimony was as to [M]other. You heard absolutely nothing about my client's relationship with [Child] so therefore 2511 (b) has not been made out as to [Father].

N.T., 8/22/16, at 87.

> Regarding counsel's argument, the trial court stated as follows:
>
> The Court: Even though the [c]ourt did not hear any bonding evaluation, the [c]ourt would assume—can infer that there is no bond, paternal bond between [Father] and [Child.] . . . .
>
> * * *
>
> So with that being said I will find there's clear and convincing evidence under 2511(a) (1, 2) and under 2511(b). And—
>
> Counsel: The [c]ourt's making inference for (b) based off no testimony?
>
> The Court: Yes.

N.T., 8/22/16, at 90, 92.

Exhibit A to the termination petition contains statements that Father "has cared for [Child] occasionally." Petition for Involuntary Termination of Parental Rights, 3/18/16, at Exhibit A, ¶ b. In November of 2013, Father "had taken [Child from Mother] and refused to return her to [Mother's]

care." *Id*. at ¶ c. On February 26, 2014, Father filed for legal and primary physical custody of Child. *Id*. at ¶ l. Thus, there are numerous statements in Exhibit A that suggest the possible existence of a bond between Father and Child. *See In re Adoption of R.J.S.*, 901 A.2d 502, 514 (Pa. Super. 2006) (case remanded where there was a dearth of testimony directly relevant to the issue of emotional bonds between the mother and her sons, if any, but the possibility of a parent-child bond was indirectly suggested by excerpts of the testimony.).

In light of the complete failure of DHS to provide any evidence at the hearing regarding Father's relationship with Child, we conclude that DHS failed to carry its burden of proof. The trial court stated that it heard no testimony that "Father ever visited Child." Trial Court Opinion, 10/14/16, at 4. This is an accurate statement. However, Exhibit A informs that Father was inconsistent with visits, at times cared for Child when Mother was in and out of jail, and even filed for custody of Child. The contacts DHS acknowledged in Exhibit A could have impacted some relationship between Father and Child, either positive or negative; therefore, the failure to present any evidence on the issue compels reversal of this case. *Adoption of R.J.S.*, 901 A.2d at 514 (while drawing no conclusion as to whether an emotional bond exists or how its severance might affect Child, "this is an issue that must be explored and addressed upon remand"). DHS has failed to maintain its burden of proof regarding 23 Pa.C.S. § 2511(b), and the trial

court erred in inferring that no bond existed in the absence of any evidence.

For these reasons, it is necessary to vacate the order terminating Father's parental rights and remand to the trial court.

Order of August 22, 2016 vacated. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2017